Good morning, and may it please the Court, my name is Mark Cauley, pro bono counsel for Appellant Mitch Medcalf. I would like to reserve one minute for rebuttal. Your Honors, this appeal presents the question of whether the Prison Health Service's appellees were deliberately indifferent to the serious medical needs of Mr. Medcalf. The District Court had before it evidence that Mr. Medcalf had one functioning kidney while he was in kidney care of appellees. That kidney was transplanted in 1995 into Mr. Medcalf. Appellees knew that Mr. Medcalf required daily doses of anti-rejection medication, and they also knew that failing to take those medications for even one day could jeopardize Mr. Medcalf's kidney causing rejection. Despite this, they failed on four occasions to provide Mr. Medcalf with the required anti-rejection medication. They simply didn't have stores of the medication at the prison pharmacy. They also utterly failed to provide him with a third anti-rejection medication called Imuran. Further, they were unable to maintain therapeutic levels of anti-rejection medication in Mr. Medcalf's bloodstream. And finally, they prescribed him ibuprofen on for kidney transplant patients. The District Court carried on. Surprisingly, though, he survived it all? Nothing happened? No adverse effects? Did he? Well, Judge Ferris, I don't believe so. He suffered on... Oh, what does the record show? Well, the record shows that he suffered from intestinal difficulties, bleeding gums. But Your Honor is correct. He did not, as of 2003, have any structural harm to his kidney. His kidney was just affected by his body. Well, it's a little bit more than that. Isn't there a requirement that he have physical injury in order to have a 1983 claim? There's a requirement, Your Honor, that he suffer harm. And the District Court and Appellees here rely on Wood v. Houseright for the proposition that it must be substantial harm. In the circuit, however, the circuit rule is not that it must be substantial harm. As this Court made clear in McGuckin v. Smith at Note 12, the rule is simply that the prisoners suffer harm. And if Judge Ferris recalls, you authored the opinion for the Court in Wood v. Houseright, and Judge Reinhardt and Judge Hug disagreed with you on the requirement of substantial harm. And as of now, the rule is simply that there must be harm. And it is Appellant's position here today that the fact that he suffered from bleeding gums. I'll stop with the bleeding gums, because your brief acknowledges that or connects the bleeding gums to the high dosage of, I've forgotten which drug, but one of the drugs which was given to him in order to boost the cyclosporine level. That's correct. Yet his chronic condition, with a couple of exceptions, was that his level was low. And so, understanding how the medical care he was provided, the main complaint being he wasn't being given enough of this medication, can't give us a cause of action because of harm that's linked to having too much of the medication. And I don't see a causal link there between the thing you're complaining about and the harm he purports to have suffered. Well, Your Honor, I think there's at least a factual question as to what caused his bleeding gums and intestinal difficulties. Because, recall, if he wasn't getting this medication on a daily basis for a period of time, and after that – He wasn't getting anything for fairly brief periods of time. Correct. I'm not saying that can't be the basis of a cause of action. But I'm – in finding a causal link, I don't know that I will infer from general knowledge that missing a few days leads to bleeding gums or any other physical manifestation. Well, Your Honor, I guess I'm asking the Court to draw – or at least consider that the facts warrant the inference that the failure to provide the medication on a daily sort of religious basis resulted in some sort of problem maintaining therapeutic levels of the drug later on. I grant you there is – Well, that I might be able to infer or at least say that there's not a compelling enough case to justify summary judgment. But if the only understanding or only thing in the brief is – in terms of what causes the swollen gums is the high amount of medication he's receiving. And the fundamental complaint is he's not getting enough medication. There's a disconnect. Well, Your Honor, the doctor is in an effort to boost the levels of cyclosporine in his bloodstream, increase the dosage of the medication at one point. But there's still an instance here where he wasn't getting three different kinds of drugs. Now, whether or not his harm was caused by not getting enough of or too much of the Gengraf slash cyclosporine or the prednisone, which he wasn't prescribed for, I believe, a period of 14 days in February of 2002, I think there's enough facts – there were enough facts before the District Court to warrant the inference that it was the doctor's failure to adequately provide medication that were – that was the cause of these conditions. And I'll also add, although there was no structural harm to the kidney, we don't know – and there's no evidence in the record – but we don't know what the long-term consequences are. What does that do for a cause of action today? Well, Your Honor, if this Court remands this matter to the District Court – I mean, ordinarily you can't bring a lawsuit saying there might be harm in the future. I understand. I understand. So you may well be right, and he may well have a cause of action once there is a physical manifestation of harm. But if the District Court's conclusion was, as we have to look at what we have in the record right now. Mr. Cawley, you mentioned February 2002. Are you abandoning the claim that he was left without medications for any rejection of kidney for eight days because of the Idaho State judgment? Are you agreeing that that's – that you're collaterally estoppel? No, Your Honor, I'm not. And whether you call it res judicata or, as Appleby's belatedly collateral estoppel, at issue in the Idaho State court decision was one isolated instance of a failure to provide medication in February of 2002. And also the ibuprofen, Your Honor. But the issue before the District Court was whether a series of failure to address or to provide him with medication constituted a deliberate indifference to his serious medical needs. This Court has drawn a distinction between isolated instances of neglect and repeated instances of neglect. Well, in your opening statement, you said that the Idaho group had failed on four occasions, four days, I take it, to give him his medication. In your allegations in your 2002 lawsuit, you said he was left without medication for any rejection of kidney for eight days. Are you talking about different days in your opening remarks and the allegations? Your Honor, you're right. There is some confusion in Mr. Metcalfe's pro se complaint. There were a period of four instances where he was left without medication. Was that post-February 2002? No. February 5, 2002 was the instance addressed by the Idaho Court of Appeals. And that was a period of time for a week where he was without anti-rejection medication. The next instance occurred in May of 2002, and that was after the Idaho court lawsuit. And it occurred again in August of 2002. So my question, and maybe you can clear it up, your claim here is that the February 2002, May 2002, and August 2002 add up to four occasions? Four different occasions of different periods of time, correct, Your Honor. And you're not conceding that the February 2002, as well as the ibuprofen claim, are barred by issue preclusion? No, you're not. No, I'm not, Your Honor. And why is that? Because at issue in the Idaho case was simply that one instance. At issue in the district court was a series of instances. Well, if it is that one instance, at least one instance, you're down from four to three. I understand. And I'm arguing, Your Honor, that the district court should have considered all of the instances, because it has an obligation to look to whether the medical providers repeatedly failed to treat an inmate properly. Even the instance that had been adjudicated in favor of the State? Yes, Your Honor, because I think the issue is not whether in the district court was whether there were repeated instances. In the instance in the Idaho court of appeal — Wouldn't there be a deliberate indifference to providing medication when the Idaho court has already found that there is no breach of any duty? Well, there, based on that one instance, the Idaho court concluded that it was just inadvertent bungling. Yes. But when you add on the other instances, and this Court has said in McGuckin v. Smith that a repeated failure to provide medication strongly suggests an instance of deliberate indifference. And in any event, Your Honor, the Idaho litigation concerned Eighth Amendment — well, Mr. Medcalf brought essentially malpractice claims improperly in a habeas action, and the court and the appellees construed that as an Eighth Amendment claim. And Mr. Medcalf, as far as I can tell from the record, and it's a difficult record, never actually litigated the Eighth Amendment in that issue. So claim preclusion, issue preclusion, whatever you call it, would not necessarily apply. I see that I'm running out of time. One last question before you run away. Are you submitting that there is a malpractice standard as to your 1983 claims rather than a deliberate indifference standard? No, Your Honor, I'm not. I'm — the district court merely referred to it as a pattern of negligent conduct. Right. The standard on deliberate — Which was really gratuitous. It was dicta. It was unnecessary, and — because the only standard that really applied was deliberate indifference. Correct, Your Honor. If there is a reason — if there's a tribal issue of fact as to malpractice, negligence, you lose anyway, because you have to meet a higher standard, deliberate indifference, right? The standard is deliberate indifference, and I'm not suggesting otherwise, Your Honor. Correct. All right. Thank you very much. The phenomenon I described occurred. We used up the last part of your time, so we'll still give you a minute for rebuttal. Thank you, Your Honor. Members of the Court, my name is Ryan McFarlane. I'm from Boise, Idaho, with a law firm of Hawley Shocks Harness & Hawley. Thank you for your attention to this case. This is an honor to be here, and I'm thankful for it. I'd like to turn first, depart from my notes just for a moment, and talk about the question raised first by Justice Ferris regarding the swollen gums as a result, or the alleged result, of the GenGraf, the adjustment in Mr. Medcalf's GenGraf medication, and point out for the Court that the very fact that it was adjusted suggests that there was no deliberate indifference here. As Justice Clipton, I think, has pointed out, the GenGraf was adjusted upward to compensate for the fact that his GenGraf, his cyclosporine level was low. The consequences of not adjusting that, I would submit to this Court, would be far worse than the bleeding gums that Mr. Medcalf complains of. Therefore, the bleeding gums, in some respect, may indicate that there was no deliberate indifference here. Also, I would add to the Court Would the bleeding gums qualify as actual harm for purposes of 1983 recovery under the law of this circuit? I'm sorry, was that? Would the bleeding gums qualify as physical harm? I would submit to the Court that it would not. I would submit that substantial harm is required. Certainly, the standard has been set that a delay that causes no substantial harm is not deliberate indifference. I would submit to the Court that the standard should be and is substantial harm. I gather that Mr. Collett had to cover a lot of ground, but I think one of his arguments was, is, you all noticed that you had a patient who had a serious medical problem. Yes, we could see that it was serious. And he needed certain medication. Right. You failed to stock it in sufficient amounts, and he thinks that amounts to deliberate indifference, because if you had otherwise, you would have stocked it in sufficient amounts so that it would have been readily available at all times. I think that's one of his points. Do you want to comment on that? I do. I do. And I think there's two ways to comment on that. The first is, the standard in order to prove deliberate indifference, it's not sufficient, as this Court is aware, to prove negligence, or even gross negligence. What must be proved is a culpable state of mind, approaching criminal recklessness, a wanton infliction of pain. That showing is not present here. That's the first way I think we answer that question. The second is, I would invite this Court to consider, as counsel has suggested it was four events, I would invite the Court to consider the fact that those four events happened within a very brief span of time. They could legitimately be considered an isolated exception. Well, it was over a matter of months, wasn't it? It was a total, I think, Your Honor, of 12 days in spanning beginning in February, and then I think the last one was in August. Well, that's more than 12 days. What's that? I mean, the span is like six months. The span is much longer. Here's the concern I have on this subject. Sure. I mean, once, maybe twice. In fact, there's a James Bond novel, I forgot which one, but I think it's Goldfinger. Anyway, they say, you know, once is happenstance, twice is coincidence, three times is enemy action. This happened four times. I'm not suggesting somebody is out to get him. Right. But there gets to be a point where, gee, we ran out. It's sort of a flimsy excuse. I mean, if you were not in jail, if you were having this happen at your local pharmacy, I doubt if you'd patronize that pharmacy again. And given his circumstances where everybody knew that the pharmacy, the dispensary, whatever they called it within the correctional institution, is the only place he can get medication, to run out four times inside of a six-month span is kind of a lot. It may be, Your Honor. It may be considered that way. I would point out for the Court that in the last time it happened, in August, they were able to give Mr. Medcalf some replacement medication. They didn't entirely ignore his needs. The total number of days that he was without the medication was 12 days. This was addressed by the prison, by prison health services. And I would also bring to the Court's attention that Mr. Medcalf, prior to these alleged events in 2002, had been in and out of prison since 1993. And there's no allegation that prior to February of 2002 that these events, that these lapses occurred. I would also point out to the Court that following the events in 2002, that he was in prison until 2005. And the problem did not repeat itself. Based on that, I would invite the Court to consider this as an isolated exception. And that these things take some time, I think, for the prison health services to straighten out. And they did, in fact, straighten out. They took steps to fix the problem. And it was fixed. I would also like to address the issue that Justice Bea raised regarding... Judge. There's no justice here. I'm sorry. We're all just judges. I'm sorry, Your Honor. This is my first time in front of you. All right. I'll plead ignorance and inexperience. Judge Bea raised the issue of collateral estoppel, which we would also invite the Court to consider. That is disputed by the plaintiff. Nevertheless, we would point out to the Court, as the Court is surely aware, that three different courts have decided this issue in favor of prison health services. Decided the issue of deliberate indifference in favor of prison health services. First was the Idaho District Court on the habeas petition in June of 2002. Secondly, the Idaho Court of Appeals on a de novo review in August of 2004. And then the Federal District Court for the District of Idaho also found no deliberate indifference manifested by prison health services. It is true that the District Court found no deliberate indifference or found that these claims were precluded on race judicata grounds. We would submit to the Court that that was an accurate finding and invite the Court to uphold that. The substance of the doctrine is that a litigant, already having had an opportunity to raise a claim in a prior court, to have that claim decided against him, is not permitted to raise it again. And in Idaho, the doctrines of race judicata and collateral estoppel are treated interchangeably. They're treated identically. As a matter of fact, the elements of both doctrines are word for word the same. In Idaho State... There's a lot we could say about those doctrines and the fact that I've had fun with the doctrines over the years, but in this case, I'm not sure what difference it really makes. Because even assuming that's correct, all it does is really carve out the first of the episodes. And we still have to deal with subsequent history. And I'm not sure even if you carve out the first of the episodes as a matter of bringing a claim, that that can't be part of the evidence for deliberate indifference. I see. That's right. The reverse side of the question Judge Baio was asking before, is it the case that if you've proceeded on a claim, failed, that was the February 2002 time period, I guess, is it the case that that time period can't be referred to for evidentiary purposes in establishing deliberate indifference in the subsequent claim, which will be based on the later deprivals? Your Honor, I suppose that it could. I frankly don't know that I have a direct answer to that question. I suppose that it could be used to, but for the reasons we've already discussed, I still invite the Court to look at the episodes from February and, in fact, into May of 2002, those few days, as evidence that this was, in fact, an isolated occurrence. But you're probably right. You could consider as evidence. I mean, I think we have to get to the summary judgment issue, and even the district court seems to indicate that because you've got the later periods in time. So the question becomes, not as a finder of fact, but applying summary judgment standards, could a jury have concluded or is there a prima facie case made out such that the plaintiff could prevail? There is not, Your Honor. We would suggest to this Court. Again, the standard is the plaintiff must show a wanton infliction of pain, a culpable state of mind. There has been no evidence that prison health services intended to inflict pain on Mr. Metcalf, and I don't think it can be shown. I don't think it was presented. The evidence is actually to the contrary, that prison health services took note of the problem and took steps to fix it. If there are no other questions, then I'll end my time now. Thank you. Thank you. Your Honor, with regard. Ms. Coward, specify what you consider indifference on this record. On this record, it's the repeated failure to provide medication that stands between Mr. Metcalf keeping his only kidney and losing it. And the state of mind here, just to correct something that Mr. McFarland said, is not that they must intend to harm Mr. Metcalf. The state of mind, according to the Supreme Court in the City of Canton v. Harris,  requires that the defendant have acted in conscious disregard of known dangers. Willful recklessness is not deliberate indifference. Deliberate indifference has to be personalized toward this person. And in this, isn't there, I was looking for, I think it's on ER 165, one time when they ran out of the medication, although they ordered it every 90 days, they ran out of the medication, they went to a local pharmacy and bought some. Right? Now, deliberate indifference would be if they ran out, they knew it was in the local pharmacy, and they said, you're just going to have to wait until our regular source comes along. We're not going to go to the pharmacy and get you your medication. That's not what happened. You're correct, Your Honor. That's not what happened here. However, given the seriousness of Mr. Metcalf's condition, I submit to you that it's not enough to simply say, well, we'll run out and get some. He had to take this three times or two times a day, every day. And missing it could jeopardize his kidney. And that's really undisputed. The failure to maintain adequate stocks of this medication, and not just Gengraf but also prednisone, also imurin, that, Your Honor, I submit to you is deliberate indifference. And that's a standard that must be evaluated in the circumstances of this case, of each case, actually. If this were somebody's knee pain, the standard would be different than if it were somebody's kidney. The seriousness of the medical condition informs whether or not there was deliberate indifference. I want to address one more thing. Mr. McFarland said that the situation did not repeat itself. In other words, after these instances, he had adequate supplies. Well, that's true, but it's also true that he sued them. And they had, therefore, every reason to keep on top of it. And it ought not to be the case that simply suing somebody is what's required to have the necessary stores of medication necessary to save someone's kidney. With that, Your Honors, I'll conclude. Thank you. Thank you. Thank both counsels for this well-presented case. The case just argued is submitted. And we move to the next case on the calendar. Wyatt v. Hortley, self-served, was submitted on the briefs by the stipulation of the parties. The next case to be argued is Miengo v. Gonzalez.
judges: Farris, Clifton, Bea